# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

DIANNA J. SCHULTZ,

        Plaintiff,

v.                            Case No. 06-CV-15437

METROMEDIA STEAKHOUSES COMPANY, LP,

        Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S
## "MOTION FOR SUMMARY JUDGMENT"

Pending before the court is Defendant Metromedia Steakhouses Company, LP's ("Ponderosa's") "Motion for Summary Judgment," filed on May 27, 2007. The matter is fully briefed and the court determines that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion.

## I. BACKGROUND

After slipping on cherry tomatoes on the floor of Defendant's Ponderosa Restaurant, Plaintiff Dianna J. Schultz instituted this premises liability action on November 21, 2006.[1] (Pl.'s Compl.) On May 25, 2007, Defendant filed its "Motion for Summary Judgment," alleging that Plaintiff's claims were barred by the open and

_____

[1]This action was filed in Jackson County Circuit Court before being removed to this court on the basis of diversity jurisdiction, in accordance with 28 U.S.C. § 1332. (*See* 12/08/06 Notice of Removal.) Defendant is a Delaware corporation with its principal place of business in Texas. (*Id.*) Plaintiff is a resident of Michigan. (Pl.'s Compl. at 2.)

obvious danger doctrine and, independently, by Defendant's lack of notice of the allegedly dangerous condition that caused Plaintiff's fall. (Def.'s Mot. at 2-9.)

On October 13, 2003, Plaintiff and her boyfriend, Mark Dillay, went to eat lunch at Ponderosa Steakhouse, a restaurant owned and operated by Defendant and located in Jackson, Michigan. (Pl.'s Dep. at 67-70, Pl.'s Ex. A; Dillay Dep. at 6, 10, Pl.'s Ex. B.) The restaurant at issue is a buffet wherein patrons place an order with their waitress, proceed to a buffet to get their food, then return to their table with their food. (Pl.'s Dep. at 71-72, Pl.'s Ex. A.) Upon arriving at the restaurant, Plaintiff and Dillay sat at a booth. (*Id*. at 71-72.) After their waitress took their drink order, Dillay went to the buffet to get food while Plaintiff remained at the table to look after her purse. (*Id*.) Once Dillay returned to the table with his food, Plaintiff proceeded to the buffet. (*Id*.) After filling her plate with food, Plaintiff returned to her table, dropped off her plate, and set out to return to the buffet in order to get a bowl of soup. (*Id*.) Plaintiff took a few steps toward the buffet, then her right foot slipped on what was later identified as a cherry tomato(es), causing her to fall to the floor, injuring her left knee.[2] (*Id.* at 79-80.)

Plaintiff had only made it a few feet away from her table before falling.[3] (*Id.* at 78-79.) At the time of her fall, Plaintiff was not carrying anything and was looking straight ahead in the direction of the soup buffet. (*Id.* at 74, 83.) Plaintiff did not know

---

[2]Plaintiff has a history of left knee problems dating back prior to her fall. (Pl.'s Dep. at 13-14, Pl.'s Ex. A.) As a result of the fall, Plaintiff exacerbated her knee problems and suffered a hairline crack to her knee bone. (*Id.* at 36.) Subsequent to her fall, Plaintiff underwent left knee replacement surgery. (*Id.* at 43.)

[3]During Plaintiff's deposition, Plaintiff drew a diagram of the area in which she fell. (Pl.'s Dep. at 75, Pl.'s Ex. A.) The diagram is attached to Plaintiff's Response. (Diagram, Pl.'s Ex. C.)

what caused her to slip until Dillay, who was escorted to Plaintiff's aid by a waitress, noticed a tomato on the bottom of Plaintiff's sandal. (Dillay Dep. at 11-13, Pl.'s Ex. B.) Dillay also observed two other cherry tomatoes and a few pieces of lettuce on the floor in the area of Plaintiff's fall. (*Id*. at 14.) Dillay testified that there was nothing obscuring his view of the tomatoes or lettuce.[4] (*Id.* at 24-26.)

Given the tomato underneath Plaintiff's shoe and the tomatoes lying in the area of Plaintiff's fall, Dillay and Plaintiff surmised that Plaintiff had slipped on one or more cherry tomatoes. (Pl.'s Dep. at 84-85, Pl.'s Ex. A; Dillay Dep. at 13, Pl.'s Ex. B.) Additionally, two patrons approached Plaintiff after she fell, one of which stated that she saw Plaintiff fall and that it appeared as though Plaintiff slipped on tomatoes. (Pl.'s Dep. at 86-88, Pl.'s Ex. A; Dillay Dep. at 15-16, Pl.'s Ex. B.) Also, a Ponderosa employee

---

[4]Dillay testified to seeing four to five pieces of lettuce, each approximately two inches in size. (Dillay Dep. at 25, Pl.'s Ex. B.) He estimated that the diameter of the tomatoes was roughly equivalent to that of a quarter. (*Id.* at 24.)

approached Plaintiff and told her that she had slipped on tomatoes. (Pl.'s Dep. at 95-97, Pl.'s Ex. A.) Plaintiff testified that prior to her fall, she had not seen any food items on the floor.[5] (*Id.* at 84.)

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

---

[5]It is not clear whether Plaintiff alleges that she also slipped on the lettuce that was found near the tomatoes. Plaintiff's complaint indicates only that she sustained injuries as a result of "an unsafe or dangerous condition" on Defendant's premises. (Pl.'s Compl. at 2.) During her deposition, Plaintiff testified that the tomato on the bottom of her shoe caused her to slip. (Pl.'s Dep. at 85, Pl.'s Ex. A.) Plaintiff also pointed out that two patrons and an employee of Defendant indicated to her that she slipped on tomatoes. (*Id.* at 87, 95.) In her response motion, Plaintiff mentions only tomatoes, not lettuce. (*See* generally, Pl.'s Resp.) Consequently, the court will proceed as though Plaintiff slipped on tomatoes only, not lettuce. However, because there exists a possibility that Plaintiff also slipped on lettuce, the court will take care to point out that its analysis of the issues herein is in no way altered by the proposition that Plaintiff slipped on both tomatoes and lettuce. In fact, such a proposition serves only to strengthen the court's determination concerning the open and obvious issue.

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 (emphasis and alteration in original) (citation omitted) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## III.  DISCUSSION

In a premises liability action, the plaintiff must prove the following elements of a negligence claim:  (1) that the defendant had a duty to the plaintiff, (2) the defendant breached that duty, (3) an injury proximately resulted from that breach and (4) the plaintiff suffered damages.  *Taylor v. Laban,* 616 N.W.2d 229, 232 (Mich. Ct. App. 2000).  Different standards of care are owed to a plaintiff in accordance with the plaintiff's status on the land.  A person entering upon the property of another for a reason directly connected to the landowner's commercial business interest is an invitee.  *Stitt v. Holland Abundant Life Fellowship,* 614 N.W.2d 88, 92 (Mich. 2000).  An invitor has a common law duty to exercise reasonable care to warn or protect an invitee from an unreasonable risk of harm caused by a dangerous condition on the land.  *Lugo v. Ameritech,* 629 N.W.2d 384, 386 (Mich. 2001).

### A.  The Open and Obvious Danger Doctrine

The basic duty to warn or protect an invitee does not generally include removal of open and obvious dangers.  "[W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee."  *Riddle v. McLouth Steel Prods. Corp.,* 485 N.W.2d 676, 681 (Mich. 1992).  Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered the danger upon casual inspection.  *Teufel v. Watkins,* 705 N.W.2d 164, 166 (Mich. Ct. App. 2005).  The test is objective and the court should look to whether a reasonable person in the plaintiff's position would foresee the danger, not

6

whether a particular plaintiff should have known that the condition was hazardous. *Corey v. Davenport College of Bus.*, 649 N.W.2d 392, 394 (Mich. Ct. App. 2002).

In the instant case, there is no evidence to suggest that the tomatoes were hidden underneath or behind some object, or otherwise obstructed. The evidence shows that the tomatoes simply lay in plain view on the floor near the buffet. The tomatoes were an open and obvious danger if it is reasonable to expect that an average person with ordinary intelligence would have discovered them upon casual inspection. *Teufel,* 705 N.W.2d at 166. The court is persuaded that a reasonable person in Plaintiff's position would have casually inspected the vicinity of the floor upon which she stepped, and would have seen the tomatoes and avoided slipping on them. Because Plaintiff testified that in the moments prior to her fall, she was looking straight ahead in the direction of the soup buffet and did not see the tomatoes or lettuce until after she fell, Plaintiff admittedly failed to look at the area upon which she was stepping. (Pl.'s Dep. at 83, Pl.'s Ex. A.)

In analyzing the open and obvious issue, courts have taken care to point out that reasonableness demands that one look in the area where one is about to step. *Jaworski v. Great Scott Supermarkets, Inc.*, 272 N.W.2d 518, 520 (Mich. 1978) ("Ordinary prudence demands that a view be taken of the place where one is about to step.") (quoting *Goodman v. Theatre Parking, Inc.,* 281 N.W. 545, 546 (Mich. 1938)). Requiring Plaintiff to glance in the area of the floor onto which she is stepping, if only casually and for a brief moment, is not unreasonable, unduly burdensome or a novel proposition. *See Bertrand v. Alan Ford, Inc.,* 537 N.W.2d 185, 187 (Mich. 1995) (stating that where the object that caused the injury created a risk of harm solely because the

7

plaintiff failed to notice it, the open and obvious doctrine eliminates liability if the plaintiff should have discovered it and realized its danger).

Dillay's testimony supports the court's finding. Dillay testified that when he looked around in the area of the floor where Plaintiff fell, he clearly saw the tomatoes and lettuce; nothing obstructed his view. (Dillay Dep. at 24-26, Pl.'s Ex. B.) Contrary to Plaintiff's suggestion, the tomatoes were observable not only because Dillay saw a tomato on Plaintiff's shoe and thus knew what to inspect the area for, but rather, because Dillay looked in the direction of the floor.

Plaintiff contends that the similarity in color between the tomatoes and the reddish-orangish tile upon which the tomatoes lay was such that the dangerous condition was not open and obvious. (Pl.'s Resp. at 7.) Although the tile upon which Plaintiff slipped bore some resemblance in color to the tomatoes, the court is not persuaded that the tomatoes blended in so completely to the tile that the average person would not have observed them upon casual inspection. Furthermore, the court rejects Plaintiff's contention that the dim lighting in the restaurant precludes a finding that the dangerous condition was open and obvious as a matter of law. (Pl.'s Resp. at 9.) The court is not persuaded that the lighting, even if dim, was such that a casual observer would not have seen the tomatoes had she scanned the area. In addition to the lights that were on inside of the restaurant, the restaurant had windows "on both sides," which, unless they were shuttered (of which there is no suggestion), allowed in

8

more light, as Plaintiff arrived at the restaurant during daylight hours.[6] (Pl.'s Dep. at 103, Pl.'s Ex. A.)

The court also rejects Plaintiff's claim that because the waitress standing near her table with a broom and butler did not pick up the tomatoes from the floor prior to Plaintiff's fall, the tomatoes must not have been open and obvious. (Pl.'s Resp. at 8.) Such a claim fails because the relevant question is whether a reasonable person in Plaintiff's position, i.e., a person walking toward the buffet, would have observed the danger upon casual inspection, not whether a reasonable person standing near Plaintiff, and not walking in the direction that Plaintiff is walking, would have observed the danger. In other words, that a nearby waitress may not have seen the tomatoes does not create a triable issue of fact with respect to whether a reasonable person in plaintiff's position would have observed the tomatoes upon casual inspection.

The court finds the case of *Kennedy v. Great Atlantic & Pacific Tea Company*, ___ N.W.2d ___ , 2007 WL 852634 (Mich. Ct. App. March 20, 2007), particularly instructive. The plaintiff in *Kennedy* slipped on crushed grapes or grape residue on the floor of the defendant's grocery store and brought a premises liability claim against the defendant. The court determined that the grapes were an open and obvious danger as a matter of law and granted the defendant's motion for summary disposition. In arriving at its conclusion, the court pointed to the fact that nothing blocked the plaintiff's view of

---

[6]Plaintiff arrived at the restaurant at around 2:00 p.m. (Pl.'s Dep. at 70, Pl.'s Ex. A.) Plaintiff described the weather as a "[n]ice, fall day," with no rain. (*Id.*) The weather was consistent with Plaintiff's choice of flat, open-heeled sandals for footwear. (*Id.* at 71.)

9

the floor immediately preceding his accident and that the plaintiff and others readily observed the grapes after looking at the floor after the plaintiff's fall, concluding:

> Plaintiff's contention that the crushed grapes and grape residue were not open and obvious is thus belied by his own deposition testimony. It is well settled that a party may not create an issue of material fact merely by contradicting his or her own deposition testimony. Plaintiff's own deposition testimony establishes that he would have noticed the potentially hazardous condition had he been paying attention. Plaintiff failed to raise a genuine issue of fact concerning whether the grape residue on which he slipped was open and obvious. The trial court properly determined as a matter of law that the hazard posed by the crushed grapes or grape residue was an open and obvious danger.
> . . . .
>
> In light of *Lugo*, we conclude that there is nothing unusual about spilled grapes or grape residue on a supermarket floor. Therefore, even if the reasoning of *Jaworski* still applies under our system of comparative negligence, it does not obviate the fact that the crushed grapes on which plaintiff slipped were open and obvious as a matter of law. Reasonable minds could not disagree that the crushed grapes on which plaintiff slipped were not "unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm." (citations omitted.)

*Kennedy*, 2007 WL 852634. Likewise, in the case at bar, there is nothing particularly unusual about small amounts of food items occasionally being dropped in the vicinity of a self-service food bar, there was nothing blocking Plaintiff's view of the tomatoes and Dillay testified that he was able to clearly see them once he looked at the floor after Plaintiff's fall. Accordingly, tomatoes, laying in plain sight on the floor, and upon which Plaintiff apparently slipped, constituted a hazard that was, as a matter of law, open and obvious.[7]

---

[7]As explained in footnote 5, to the extent that Plaintiff might be thought to have slipped on particles of lettuce in addition to tomatoes, such lettuce was likewise open and obvious as a matter of law, pursuant to the above analysis.

10

### B. Special Aspects

Even where a danger is open and obvious, the invitor is still under a duty to warn or protect the invitee where the condition has "special aspects" rendering it "unreasonably dangerous." *Mann v. Shusteric Enters.*, 683 N.W.2d 573, 577 (Mich. 2004). In determining whether a condition is unreasonably dangerous, a court must consider whether special aspects exist, such as a condition which is unavoidable or which poses an unreasonably high risk of severe injury. *Lugo*, 629 N.W.2d at 386. The determination must be based on the nature of the condition at issue, and not on the degree of care used by the invitee. *Id.* at 390. The *Lugo* court provided two examples of situations that might involve special aspects and present "an unreasonable risk of harm" despite their open and obvious character: a commercial building with only one exit for the general public where the floor is covered with standing water, and an unguarded thirty-foot-deep pit in the middle of a parking lot. *Id.* at 387.

With regard to establishing unavoidability, Plaintiff cannot make such a showing. Had plaintiff taken a quick look toward the floor, she would have observed the tomatoes and could have, with little difficulty, stepped over or around them. There is no evidence to suggest that there was not ample room to maneuver around the tomatoes had Plaintiff taken care to look in their direction and become aware of them.

Moreover, plaintiff cannot establish that the tomatoes posed an unreasonably high risk of severe injury. Insofar as any object left lying on the floor presents a risk that someone may trip and fall over it, the tomatoes certainly presented a danger. However, the type of danger contemplated by *Lugo* is of a different nature. The critical inquiry is whether there is something unusual about the tomatoes, which "because of their

character, location, or surrounding conditions" gives rise to an unreasonable risk of harm. *Bertrand*, 537 N.W.2d at 189-90. When analyzing whether an ordinary pothole in a parking lot could give rise to an unreasonable risk of harm, the *Lugo* court concluded, "there is little risk of severe harm. Unlike falling an extended distance, it cannot be expected that a typical person tripping on a pothole and falling to the ground would suffer severe injury." *Lugo*, 629 N.W.2d at 388. Pursuant to the same analysis, the tomatoes in the instant case cannot be considered to have given rise to an unreasonably high risk of severe injury.[8]

Accordingly, Plaintiff has failed to present sufficient evidence to create an issue of fact concerning whether the tomatoes possessed "special aspects."

### C. Lack of Notice

Even if the tomatoes were considered to not be open and obvious, or considered to possess special aspects which preclude the application of the open and obvious doctrine, Plaintiff's claims still fail given that she cannot establish a question of fact with

---

[8]The Michigan Supreme Court has further stated:

> In considering whether a condition presents such a uniquely dangerous potential for severe harm as to constitute a 'special aspect' and to avoid barring liability in the ordinary manner of an open and obvious danger, it is important to maintain the proper perspective, which is to consider the risk posed by the condition a priori, that is, before the incident involved in a particular case. It would, for example, be inappropriate to conclude in a retrospective fashion that merely because a particular plaintiff, in fact, suffered harm or even severe harm, that the condition at issue in a case posed a uniquely high risk of severe harm. . . . [T]his opinion does not allow the imposition of liability merely because a particular open and obvious condition has some potential for severe harm.

*Lugo,* 629 N.W.2d at 388 n.2.

respect to whether defendant had actual or constructive notice of the tomatoes in sufficient time to safeguard Plaintiff from them. In order to sustain a premises liability claim, Plaintiff must establish that defendant or its employees created the unsafe condition, or had actual or constructive knowledge of the unsafe condition in sufficient time to repair or safeguard plaintiff from it. *Clark v. Kmart Corp.*, 634 N.W.2d 347, 348-49 (Mich. 2001). "Something more should be offered the jury than a situation which, by ingenious interpretation, suggests the mere possibility of defendant's negligence being the cause of injury." *Skinner v. Square D Co.*, 516 N.W.2d 475, 481 (Mich. 1994). Summary disposition is appropriate where the plaintiff has failed to present any evidence from which a jury could infer that the dangerous condition existed for a sufficient period of time to charge the defendant with constructive notice. *McCune v. Meijer, Inc.*, 402 N.W.2d 6, 7 (Mich. Ct. App. 1986).

First, Plaintiff has failed to provide evidence that suggests Defendant or its employees created the unsafe condition. Even viewed in the light most favorable to Plaintiff, there is only a possibility that Defendant, rather than a patron, dropped the tomatoes on the floor.

Second, there is no evidence that would support a contention that Defendant had actual or constructive knowledge of the dangerous condition in sufficient time to repair or safeguard Plaintiff from it. Both Plaintiff and Dillay testified that they did not know how long the tomatoes were on the floor. (Pl.'s Dep. at 89, Pl.'s Ex. A; Dillay Dep. at 15, Pl.'s Ex. B.) Although Plaintiff proffers that the tomatoes had likely been on the floor for a significant period of time given that she arrived at the restaurant after the typical lunch hour rush had already ended and the restaurant was sparsely occupied, such an

assertion is mere speculation. Furthermore, Plaintiff herself testified that she did not see any food on the floor prior to her fall. (Pl.'s Dep. at 84, Pl.'s Ex. A.)

In sum, Plaintiff's arguments in support of her claim of notice amount to nothing more than speculation and conjecture. Accordingly, Plaintiff cannot establish a triable issue of fact concerning whether Defendant had the notice required to sustain a premises liability claim.

### IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 13] is GRANTED.


                                          s/Robert H. Cleland

                                          ROBERT H. CLELAND
                                          UNITED STATES DISTRICT JUDGE

Dated: July 31, 2007


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 31, 2007, by electronic and/or ordinary mail.

                                          s/Lisa G. Wagner

                                          Case Manager and Deputy Clerk
                                          (313) 234-5522